TUCKER, Judge.
The district court of Petersburg (without any previous rule, as far as appears by the record), granted a mandamus to the justices of Dinwiddie court, without naming them, to appoint commissioners to join others appointed by Chesterfield court, to let the re-building of- Pocahontas bridge, across Appomattox river at Petersburg, without stating that the bridge had theretofore been erected *and kept in repair at the joint expense of both counties; or that the river Appomattox divided the two counties; or even that the bridge was upon any public road.
A return was made to this mandamus, by attorney ; And the causes assigned were, 1. That the re-building of the bridge would obstruct the navigation of the river. 2. That its situation, whenever there was a rise in the river, was-inconvenient. 3. That, about a mile, or a mile and a half above, at Campbell & Wheeler’s mills, there is a sufficient bridge maintained at the expense of both counties. 4, . That, when Dinwiddie county court assented.to bear a part of the expense of the last -mentioned bridge, the commissioners, on the part of Chesterfield, assured the said court of Dinwiddie, that all claim, upon that court, for-re-building Pocahontas bridge, should be forever relinquished, in consideration of which- only the said court .gave such assent. 5. Because there is a - toll-bridge near Pocahontas bridge, which -answers every purpose of public convenience. 6. That the bridge is not necessary.
The district court awarded a peremptory mandamus ; and the justices of Dinwiddie appealed to this court.
With a view to save the future time of this court; the delay and inconvenience to the public, if this judgment be reversed; and all future expense and litigation between the parties, I shall first consider the merits of the case, as brought forward by the appellants : secondly, the validity of the return made in their behalf ; and thirdly, the validity of the writ of mandamus, and the propriety of granting it. My reasons for this inverted order of considering the case, will then be shortly given.
1. The first cause assigned by the justices of Dinwiddie for not obeying the writ is, that the re-building the bridge would obstruct the navigation of the river. To this the -ap-pellees might have replied, that the river was not navigable, nor capable of being made navigable for vessels above two hundred yards higher up ; and if issue- had been taken upon that fact, and. found for the appellees, I conceive that cause would have been insufficient to quash the writ. ■ *2. The second cause assigned is, that the situation, whenever there is a rise in the river, is inconvenient. To this, it might have been replied, that that inconvenience might be effectually removed by a short causeway from the foot of the bridge to the rising ground in Petersburg ; and that fact, if put in issue, and found for the appellees, would have afforded no ground for quashing the writ.
3. The third cause assigned is, that there is another sufficient bridge at Campbell & Wheeler’s about a mile, .or a mile and a half -higher up, which is kept up at the expense of both -counties. To this, it might have been, replied, that Pocahontas bridge is upon the main public road leading to the seat of government; that it is an ancient bridge, long established, and heretofore kept in repair by both counties ; that the bridge at Campbell- & Wheeler’s is not upon the public road leading to the seat of government: that Petersburg is a staple town, where public warehouses for the inspection of tobacco are established; and that discontinuing the bridge at Pocahontas would be a great grievance and inconvenience to such of the inhabitants of Chesterfield as have used and still use to carry their tobacco thither to be inspected. If either of these facts had been put in issue-and found for the appellees, it would have been good cause for awarding the mandamus.
4. The fourth cause assigned is, a relinquishment of all' claim to future repairs of this bridge ; which, if true, 'is against law. The court, of Chesterfield had no power or authority to make such a proposal; or, if accepted, - to make -such a relinquishment: How-could the justices then sitting bind their successors by any such engagement, when it might be in proof, that the public convenience required, that the bridge at Pocahontas should always be -kept in repair? ' If there was any such assurance on the part of the commissioners, they exceeded- their authority; which was only to'-meet other commissioners, to be appointed by Dinwiddie court, to confer with them, and agree on the manner and conditions of- letting the repairs of the bridge. No evidence *on this point ought to have been heard by the court; and, if there had been no other cause assigned- for quashing' the writ, it ought to have been awarded; because this was against law, and against public convenience and utility.
5. The fifth reason assigned is, that there is a toll-bridge near thereto, which answers every purpose of-public convenience. Now public convenience is compounded of private convenience. It is no doubt a great private convenience to one individual, (the owner of this toll-bridge), that five hundred inhabitants of Chesterfield and as many of Din-widdie, should, instead of crossing the river free, in consideration of contributing to the building and keeping Pocahontas bridge in repair, pay him as much toll in one day for crossing his bridge,' as they would pay in a year, or perhaps in seven, for re-building and keeping the public bridge in -repair. But it would be hard to prove that this heavy contribution answers every purpose of public convenience- to those inhabitants of these counties, (not to mention all others who have occasion to travel this public road), who are *1049 thus to be taxed to fill the coffers of the owner of the toll-bridge.
6. The sixth reason assigned is, that the bridge is not necessary. This is offering a conclusion instead oí a fact: And as it is a conclusion in direct opposition to facts that might have been put in issue, and which probably would have been found, it deserves no other attention.
Therefore the causes assigned in behalf of the Dinwiddie justices, had they been properly assigned, and due proceedings thereupon had, would probably have been considered in this court, as they were in the district court, where the truth of some, and validity in law of others, appears to have been examined, in a manner probably agreed on between the parties, as not shewing a sufficient reason for quashing the mandamus. But had there been sufficient matter alleged by way of cause against- the peremptory mandamus, yet, in the way the same was presented to the court, it did not amount to a return.
*The return to a mandamus- 'must be made by the person or persons to whom the writ is directed. But, in this case, it- is made by- the attorney, and not by the jus-’ tices, or by the court, under their county seal, certified by the clerk of the county. One or other of which modes, (I am not prepared to say which;) appears to me to be more proper than that which has been adopted; Bor I presume it will not be contended, that they could be made liable in an action for a false return, not made by themselves, but by the attorney ; which, of itself-, satisfies me of the insufficiency of this return; Now, no point seems better settled, than that if no return be made to the first writ of mandamus, (which is always in the alternative; either to do the thing, or to shew cause for not doing it,) so - that no cause is shewn ; or if sufficient cause be not shewn, or not properly shewn, the peremptory writ of mandamus shall be awarded.
I come then thirdly to consider the writ of mandamus itself, and the proceedings in order thereto, as far as they apjiear upon this record. At present, it does not appear that there was any rule to shew Cause : but that, is an indispensable prerequisite, and might-have been shewn for cause against awarding the peremptory writ. However, as a defendant may waive the necessity of a writ- in common cases, and may voluntarily come into court, and defend the suit or confess judgment, as was formerly done in the general court, in the case of Picket v. Claiborne, so I apprehend the justices might waive the previous notice, and appear to the writ of mandamus, by making a return thereupon, assigning the causes for not obey in git, omitting this as one. But, being of opinion that they have not-appeared, nor made any return to the writ, for the reasons before stated, I think every objection upon that ground, still open to them ; and that this court cannot get over quashing the writ, because it issued improvidently, without such previous notice. If-1 had any doubt as to this point, I should still be of opinion, that the writ ought to be quashed; because it does not state, that the bridge was over a water course which divided two counties; *nor that the same was-an ancient bridge, which had-been built and kept in repair at the expense of both counties ; nor even that it was upon any public road, leading from one county to another, or to the seat of government, &c. All which objections, as the defendants have never appeared, and by their answers directly or indirectly waived them, I conceive may now be made, and that the writ ought to be quashed ; and, consequently, that the judgment of the district court, awarding a peremptory mandamus, should be reversed.
ROANE, Judge.
As there was no rule to shew cause, the mandamus issued improvidently ; and therefore X am of opinion, that the judgment should be reversed, and the writ quashed.
EYONS, President, concurred.